UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERROL MATTHEWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11 C 3353 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| SYLVIA TIENDA and | ) |
| CHIEF EDINBURGH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants' motion to dismiss the Second Amended Complaint is granted as to Count I, but denied as to Count II. This case is set for status on January 23, 2015 at 9:30 a.m.

**STATEMENT**

**A. Background**

Before the court is Defendants' motion to dismiss plaintiff Errol Matthews's Second Amended Complaint. Defendants' motion primarily challenges the sufficiency of allegations the court has already found adequate to state a claim for relief.

According to the Second Amended Complaint, Matthews injured his knee in July 2008 while completing an on-the-job training course for new firefighter and emergency medical technician ("EMT") candidates who were applying for employment with the Chicago Fire Department ("CFD"). Matthews subsequently underwent surgery to repair a torn meniscus. In April 2009, after several months of physical therapy, Matthews's doctors released him to return to work on a sedentary- or light-duty basis, but the CFD informed Matthews that light duty assignments were unavailable.

Matthews, who is black, later learned that sedentary or light duty assignments were provided to some white firefighter candidates who, like Matthews, needed to recover from an injury or illness. After being denied a light duty assignment, Matthews was placed on unpaid medical leave, lost his health insurance coverage, and was not allowed to join a subsequent CFD candidate class.

In May 2011, Matthews filed this suit. In his original complaint, he brought claims against the CFD personnel he believed had the authority to decide and ultimately approve which firefighter and EMT candidates could be placed on light duty: Sylvia Tienda, an Ambulance Commander in the Medical Section of the CFD, and Mark Edingburg, the Medical Section Chief at the CFD.[1] Matthews sued Tienda and Edingburg in their individual capacities for race discrimination under Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981 (2006) and for violation of his constitutional right to equal protection pursuant to the Fourteenth Amendment of the U.S. Constitution through Section 1983, 42 U.S.C. § 1983 (2006).

Matthews subsequently amended his complaint twice. In the currently operative Second Amended Complaint, Matthews avers that two additional CFD employees—defendants John McKillop, the Assistant Director of Training at the Fire Academy, and Dr. Hugh Russell, the Medical Director of the CFD—also "allowed" other white male candidates to return from medical leave and perform light or sedentary duties as they continued to recover. ECF No. 80 ¶ 25. Matthews claims that he did not know that McKillop and Russell had the authority to approve which firefighter and EMT candidates could receive light or sedentary duty accommodations until October 2012,

---

[1] The original complaint named Mark Edinburgh as "Chief Edinburgh." Defendants and Matthews later conceded that the proper name for the person who should have been sued was Mark Edingburg. *See* ECF No. 22 at 1 n. 1.

when Matthews deposed Tienda and Edingburg. Matthews asserts that he could not have discovered McKillop's and Russell's involvement in his case before those depositions took place.

   B. Legal Standard

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013). To withstand a Rule 12(b)(6) motion, the complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient "to raise a right to relief above the speculative level. . . ." *Id. See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotation marks omitted).

   C. Analysis

      1. Matthews's § 1981 Claim

Matthews concedes in his response to Defendants' motion that a development in Seventh Circuit law warrants dismissal of his § 1981 claim. A week before his response was due, the Seventh Circuit held in *Campbell v. Forest Preserve Dist. of Cook County, Ill* 752 F.3d 665, 671 (7th Cir. 2014), that § 1983 is the exclusive remedy for violations of § 1981 committed by state actors. In light of this development in controlling law,

Matthews no longer can bring a stand-alone § 1981 claim. Accordingly, Count I is dismissed with prejudice.

### 2. Matthews's § 1983 Claim

The court finds that Matthews states a claim under § 1983. A plaintiff must allege two elements to state a § 1983 claim: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Here, the "activity" at issue is Defendants' alleged violation of Matthews's constitutional right to equal protection. To state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he or she: "(1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class and (5) the defendant acted with discriminatory intent." *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 564 (7th Cir. 2000).

The Second Amended Complaint plainly satisfies the first element of a § 1983 claim. Matthews alleges that each defendant acted under the color of law, as they were all CFD employees in positions of authority. *See Id.* at 567 (explaining that defendants act "under color of state law" when "the state has cloaked [them] in some degree of authority—normally through employment or some other agency relationship".) This allegation is sufficient to establish the requisite state action.

The issue, from the Defendants' standpoint, is whether Matthews sufficiently pleads a deprivation of his constitutional rights. It is undisputed that Matthews

4

predicates his § 1983 claim on a violation of his constitutional right to equal protection. Defendants assert that Matthews's allegations fail to support a violation of the Equal Protection Clause because they do not suggest that he suffered an adverse employment action or intentional discrimination. As a result, Defendants contend that Matthews's § 1983 claim must be dismissed for want of any deprivation of a constitutional right. In addition, Defendants argue that Matthews's § 1983 claim should be dismissed as to defendants Russell and McKillop because it is untimely. The court addresses each proffered basis for dismissal in turn.

### i. Adverse Action

"An adverse employment action must 'materially alter the terms and conditions of employment.'" *Dass v. Chicago Bd. of Ed.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). Generally speaking, "adverse employment actions for purposes of the federal anti-discrimination statutes [ ] fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; (3) unbearable changes in job conditions, such as hostile work environment or conditions amount to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

In its January 9, 2012 order, the court implicitly concluded that Defendants' refusal to allow Matthews to go on sedentary, light, or modified duty following an injury at work constituted an adverse action. *See* ECF No. 22 at 3-4. None of the arguments Defendants advance in their motion upends this conclusion.[2]

---

[2] At times, Defendants make arguments without regard to Matthews's allegations. Defendants, for instance, claim that "there is no allegation to suggest that Plaintiff was prevented from returning to work or was facing termination by the CFD." ECF No.87 at

First, Defendants maintain that they were not the "policymaker[s] responsible for creating the CFD policy that does not offer sedentary or light duty to its (sworn) employees." ECF No. 83 at 13. This argument mirrors one that Tienda and Edingburg offered in moving to dismiss the original complaint. Tienda and Edingburg asserted that they could not be held liable for the CFD's decision to deny Matthews's request for light duty work since they did not personally participate in the denial. This assertion remains unavailing. Matthews alleges that Defendants "were the agents of the CFD in making such determinations." ECF No. 22 at 4. As the court previously determined, "That is enough to state a claim" because Matthews adequately alleges that each Defendant held a position of authority and personally determined whether to grant requests for sedentary or light duties. *Id.*

Second, Defendants argue that denying Matthews's request to work in a modified capacity does not qualify as an adverse action. They stress that, as a matter of law, "employers are under no obligation to restore an employee to his or her position if the employee is unable to perform the essential functions of the job." ECF No. 87 at 5 (quoting *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013)). But Defendants misapply this authority.

---

8. But this claim is untrue. Matthews expressly alleges that he was placed on "unpaid medical leave" and "not permitted to join any subsequent [CFD] Candidate class." ECF No. 80 ¶¶ 31, 37. Another example is Defendants' contention that "Plaintiff was informed that his health insurance was in good standing and would remain in good standing as long as he made his monthly contribution." ECF No.87 at 6. Thus, the argument goes, Matthews did not suffer any harm related to his health insurance coverage. Defendants, however, ignore Matthews's allegation that his coverage was cancelled notwithstanding the information he received from the CFD. ECF No. 80 ¶ 34. The court finds it unnecessary to pinpoint every single instance in which the Defendants either sweep aside or rewrite Matthews's allegations.

At issue in *James* was whether an employer retaliated against an employee who attempted to exercise his rights under the Family Medical Leave Act ("FMLA") by not restoring him to the same position he held before he went on FMLA leave. The court granted the employer's motion for summary judgment, in part, because no evidence showed that the employer took an adverse action against the employee. Rather, the record indicated that the employer had "attempted on multiple occasions to return [the employee] to work," notwithstanding the employee's allegations otherwise. *Id*. at 782.

Further, the court noted that its decision to grant summary judgment on the employee's other FMLA claim—predicated on the employer's alleged interference with the employee's attempt to exercise his FMLA rights, 29 U.S.C. § 265(a)(1)—cut against the materiality of the alleged adverse action. *Id*. "*As we discussed above*," the court clarified, the employer "did not violate the FMLA by not returning [the employee] to work. . . ." *Id.* (emphasis added). The previous discussion that the court referenced was its holding that "an employer has no duty under the FMLA to return an employee to his or her position, if that employee cannot perform an essential function of the job." *Id.* at 781 (citing 29 C.F.R. § 825.214(b)). Again relying on the record, the court found that the employee's inability to perform an essential function of his job meant that his employer was under no duty to return the employee to his prior position. *Id*. Since the employee could not prove that his employer interfered with his FMLA benefits, the court concluded that the employee could not show that he suffered an adverse action on the basis of his FMLA interference claim. *Id*. at 782.

There are several distinctions between this case and *James*. One is the posture of the proceedings. The court is ruling on Defendants' motion to dismiss, in which the

7

court must draw all inferences in favor of the plaintiff. *Pisciotta*, 499 F.3d at 633. By contrast, *James* was at the summary judgment stage, and the court expressly found that the record belied the employee's allegations. Additionally, the claims and factual allegations in this matter and *James* are distinguishable as well. Unlike the employee in *James*, Matthews is not suing to enforce his FMLA rights. His action is for employment discrimination. Matthews alleges that: (1) he requested a sedentary- or light-duty assignment because of an injury he suffered in the workplace and his ongoing recovery therefrom; (2) he was able to return to work, except in a more physically limited, temporary role; (3) CFD personnel responded by informing him that such assignments were unavailable as a matter of policy; (4) Defendants granted requests for sedentary or light work from other similarly situated white male CFD candidates who also claimed to have suffered an injury or other medical condition; and (5) after the CFD rejected Matthews's request, he lost wages, his health insurance, and the opportunity to join a subsequent candidate class. These allegations state a claim under § 1983 for a deprivation of the constitutional right to equal protection. To compare the failed attempt to prove an FMLA entitlement in *James* to Matthews's allegations of race discrimination ignores not only the constitutional essence of Matthews's claim, but the consequences that allegedly befell him as a result of the CFD's denial of his request.

Next, Defendants question Matthews's specific allegation that he was not permitted to join any subsequent candidate class. Calling this allegation "speculative," Defendants claim that Matthews "resigned before he was able to be called back to the next candidate class." ECF No. 83 at 12. The court does not deduce from Matthews's allegation that he "was not permitted" to join a subsequent candidate class that he

necessarily resigned from the CFD. Nowhere does the word, "resign," or any suggestion of a resignation appear in the Second Amended Complaint. Insofar as Defendants are attempting to introduce unsworn evidence in support of their motion, the court is unpersuaded.

Finally, Defendants take issue with Matthews's allegation that he was "constructively discharged." *See* ECF No. 80 ¶ 37. "The Seventh Circuit has recognized two forms of constructive discharge." *Jones v. Nat'l Council of YMCA of the United States*, No. 09-cv-6437, 2014 U.S. Dist. LEXIS 82709, at *151 (N.D. Ill. June 18, 2014). "The first occurs when an employee resigns due to alleged discriminatory harassment." *Id.* (quotation marks omitted). The second occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.* (quoting *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010)). *Id.* at *152-53. "In this situation, the employer's conduct may amount to a constructive discharge if the employee resigns." *Id.*

*Ultimately, it is unclear which form of constructive discharge Matthews is pursuing, if any, because he does not allege that he resigned. Rather, he alleges that "he was not permitted to join any supplemental class." ECF No. 80 ¶ 37. Moreover, whether Matthews adequately pled either form of constructive discharge is immaterial because he has sufficiently alleged that he experienced an adverse employment action on other grounds. See Cty. Of McHenry v. Ins. Co. of the West, 438 F.3d 813, 818 (7th Cir. 2006) (district court must "consider whether a plaintiff could prevail under any legal theory or set of facts").*

      **ii.**      **Intentional Discrimination**

Defendants claim that Matthews insufficiently alleges that they intentionally discriminated against him. To survive dismissal, "A discrimination complaint must simply aver that the employer instituted a specific adverse employment action on the basis of the plaintiffs' gender, race, or other protected category." *Cusick v. Cent. Grocers, Inc.*, No. 12-cv-10200, 2014 U.S. Dist. LEXIS 30380, at *6 (N.D. Ill. Mar. 10, 2014) (citing *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)). "A complaint [alleging discrimination] need not 'allege all, or *any*, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo*, 526 F.3d at 1081 (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (emphasis in original)). The more straightforward a case is, the less detail a plaintiff must provide to "state a claim to relief that is plausible on its face." *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949).

The court finds that Matthews's allegations pass muster under the "minimal pleading standard" that applies to his "simple claim[]" of race discrimination. *Tamayo*, 526 F.3d at 1081. In his Second Amended Complaint, Matthews identifies "(1) who discriminated against [him]; (2) the type of discrimination that occurred; and (3) when the discrimination took place." *McCauley v. City of Chi.*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Swanson, 614 F.3d at 404). Specifically, Matthews alleges that Defendants allowed similarly-situated white candidates to return to work on a sedentary- or light-duty basis to accommodate their recovery from injury. He further alleges that Defendants denied his request for a sedentary or light duty assignment, despite also needing additional time to recover from his work-related injury. Mathews pleads that*

*Defendants gave this preferential treatment to his similarly-situated white counterparts but denied it to him because of his race. Matthews's allegations are more than sufficient to go forward.*

### iii. Timeliness

Defendants' final basis for dismissal is that Matthews's § 1983 claim is untimely as to Russell and McKillop. As a matter of law, Defendants maintain that Matthews's claim is subject to a two-year statute of limitations. *See Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011). Defendants contend that the limitations period started to accrue against Russell and McKillop in May 2009, when the CFD allegedly denied Matthews's request for sedentary or light duty. Defendants count forward from that point in time and claim that Matthews had two years, or until May 2011, to name Russell and McKillop as defendants. Because Matthews did not sue Russell and McKillop until July 2013, Defendants argue that his § 1983 claim against them is time-barred.

In response, Matthews does not dispute that a two-year limitations period applies to his claim. Instead, he challenges Defendants' assumption that his claim began to accrue in May 2009. In federal suits, the accrual of claims is governed by the discovery rule. *See United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010). "The discovery rule starts the state of limitations running only when the plaintiff learns that he's been injured, and by whom." *Id.*

Matthews avers that applying the discovery rule to his allegations yields an accrual date sometime in October 2012, when he deposed defendants Tienda and Edingburg. From these depositions Matthews allegedly learned that Russell and McKillop "had authority to approve which Firefighter and EMT candidates could receive

[sedentary or light] accommodations at the Academy." (Sec. Am. Compl. ¶ 25.) Matthews further alleges that he "could not have learned those facts before those depositions were taken." *Id*. Thus, Matthews contends, his claim is within the limitations period because he brought it against Russell and McKillop within two years of discovering that they had allegedly injured him.

Defendants, in turn, present three grounds for embracing May 2009—as opposed to October 2012—as the approximate accrual date for Matthews's § 1983 claim against Russell and McKillop. First, Defendants assert "there is a question as to whether" the discovery rule applies to Matthews's Section 1983 claim of discrimination, "as there is no case precedent in the context of discrimination claims." (ECF No. 87 at 13.) Assuming *arguendo* that this assertion is true, Defendants fail to explain how the purported absence of authority warrants dismissal. And the fact of the matter is other courts in this district have applied the discovery rule to determine the accrual date of a § 1983 action. *See, e.g., CBS Outdoor, Inc. v. Vill. of Plainfield*, 959 F. Supp. 2d 1054, 1061 (N.D. Ill. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Second, Defendants argue that even if the discovery rule applies Matthews had "enough information to know that he had been injured and by whom . . . when he was initially denied the light duty accommodation that CFD personnel allegedly allowed to similarly situated white candidates." ECF No. 87 at 13. Defendants, however, provide no support for this argument. They neither identify the information Matthews allegedly possessed nor explain how it was "enough" for Matthews to know that McKillop and Russell had allegedly injured him. Consequently, for the court to accept Defendants' proposed application of the discovery rule, it must draw inferences from Matthews's

allegations in Defendants' favor. This the court cannot do. *See Alam*, 709 F.3d at 665-66.

Finally, Defendants claim that Matthews cannot avail himself of the discovery rule because it is available only to the "reasonably diligent plaintiff." *See Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010); *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1014 (7th Cir. 2012). As Defendants see it, Matthews "could have, and should have, learned of Russell and McKillop's involvement in or around May 2009" based on whatever information enabled Matthews to identify Tienda and Edingburg as defendants in the first place. ECF No. 87 at 13. But Defendants again skip a step: Matthews does not specify the information that led him to name Tienda and Edingburg as defendants. The court would have to infer that whatever information alerted Matthews to Tienda's and Edinburg's alleged liability should have prompted Matthews to identify Russell and McKillop as possible defendants as well. The court cannot draw such an inference in Defendants' favor in considering their motion to dismiss.

Rather than moving the court to dismiss the complaint, notwithstanding the governing pleading standard, Defendants would be better served issuing discovery and moving for summary judgment. What information Matthews knew, when he knew it, and whether he could have connected the dots to Russell and McKillop before deposing the other defendants are questions Matthews will have to answer if he seeks to rely upon the discovery rule past the pleading stage. But these questions cannot be resolved from the face of his complaint. Accordingly, Defendants' motion to dismiss Matthews's § 1983 claim is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted as to Count I, but denied as to Count II. This case is set for status on January 23, 2015 at 9:30 a.m,

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 22, 2014