IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERROL MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 11 C 3353 |
| SYLVIA TIENDA, ) | Judge Joan B. Gottschall |
| MARK EDINGBURG, DR. HUGH ) | |
| RUSSELL and JOHN McKILLOP, ) | |
| ) | JURY DEMAND |
| Defendants. ) | |

### THIRD AMENDED COMPLAINT

Plaintiff Errol Matthews, by his attorneys, complains of Defendants Sylvia Tienda, Mark Edingburg, Dr. Hugh Russell and John McKillop as follows:

**I.      NATURE OF THE CASE**

1. This is a civil action for damages, declaratory judgment and injunctive relief to remedy Defendants' deprivation of Plaintiff's rights under the United States Constitution. Plaintiff has been deprived of his rights under the Equal Protection Clause of the Fourteenth Amendment by reasons of Defendants' preferential treatment of similarly situated white employees over Plaintiff, who is African-American. Plaintiff brings this action under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), seeking to redress Defendants' unlawful employment practices on the basis of race. Plaintiff complains that similarly situated white employees were given preferential treatment, and that Defendants intentionally discriminated against him on the basis of his race, African-American, through Defendants' policies, customs, actions or

practices. In so doing, Defendants have interfered with Plaintiff's ability to make, enforce, and enjoy the benefits, privileges, terms and conditions of his contract of employment with the Chicago Fire Department on terms equal to non-African-Americans.

## II.     JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

3. Venue is proper because all of the parties reside in this district and because all of the conduct complained of occurred within the Northern District of Illinois, Eastern Division.

## III.     THE PARTIES

4. Plaintiff Errol Matthews ("Matthews") is an African-American man who resides in Chicago in Cook County, Illinois. Matthews was a Firefighter and Emergency Medical Technician ("EMT") Candidate with the Chicago Fire Department in July 2008.

5. At all times relevant to this complaint, Defendant Sylvia Tienda ("Tienda") was an Ambulance Commander in the Medical Section at the Chicago Fire Department who, upon information and belief, had authority to decide which Firefighter and EMT Candidates could be placed on light duty. Tienda is sued in her individual capacity for her unlawful acts under color of law.

6. At all times relevant to this complaint, Defendant Mark Edingburg ("Edingburg") was the Medical Section Chief at the Chicago Fire Department, who, upon information and belief, had authority to approve which Firefighter and EMT candidates could be placed on light duty. Edingburg is sued in his individual capacity for his unlawful acts under color of law.

7. At all times relevant to this complaint, Defendant Dr. Hugh Russell ("Russell") was the Medical Director of the Chicago Fire Department, who, upon information and belief, had authority to approve which Firefighter and EMT candidates could return to duty. Russell is sued in his individual capacity for his unlawful acts under color of law.

8. At all times relevant to this complaint, Defendant John McKillop ("McKillop"), was the Assistant Director of Training at the Fire Academy, who, upon information and belief, had authority to adjust, modify, or accommodate the training schedule of Firefighter and EMT candidates when they were at the Fire Academy. McKillop is sued in his individual capacity for his unlawful acts under color of law.

### IV. ALLEGATIONS OF FACT

9. In July 2008, Plaintiff Errol Matthews ("Matthews") was a Firefighter and Emergency Medical Technician ("EMT") Candidate with the Chicago Fire Department.

10. Matthews began the Chicago Fire Department Training on July 1, 2008.

11. On July 11, 2008, Matthews injured his right knee during the Chicago Fire Department base-line training test. Matthews informed both of his Instructors, Instructors Tobias and Baylin, about his injury. Instructor Baylin asked Matthews if he could make it to the other side of the course, and Matthews informed him that he could.

12. Once the class returned to the classroom, another instructor, Instructor Williams, informed the class that all candidates "owed him time" and instructed the class to complete three sets of drills. Instructor Williams told the candidate class that if they could not complete the exercise, they needed to quit and go home. One candidate quit. All the other candidates completed the drills and were then released to go home.

Matthews did not want to quit, and none of the Instructors with knowledge of his injury told him to refrain from the drills. Therefore, Matthews performed the three sets of drills despite being in intense pain from his injury.

13. On July 13, 2008, Matthews was taken to the Hines VA Hospital where he was diagnosed with overuse of his right knee. Matthews' doctor requested an MRI.

14. On July 14, 2008, Dr. Russell examined Matthews at the Fire Department Medical Section. Dr. Russell placed Matthews on "lay up." Matthews returned to the Hines VA Hospital to be fitted for a knee immobilizer. Matthews was told to visit the Fire Department Medical Staff every two weeks to review his status.

15. On July 19, 2008, Matthews had an MRI taken on his knee at Hines VA Hospital. On July 23, 2008, Matthews had orthopedic counseling at the hospital, and the doctor told him he had a torn meniscus. The orthopedic doctor recommended physical therapy to treat the injury.

16. On or about July 29, 2008, Commander Mary Kay told Matthews that physical therapy was not a treatment option with the VA. She referred Matthews to see an orthopedic doctor at Rush Midwest Orthopedics.

17. On August 4, 2008, Matthews met with Dr. Bach at Midwest Orthopedics who recommended that Matthews have surgery to repair his torn meniscus. From September 15, 2008 until October 16, 2008, Matthews completed physical therapy at Midwest Orthopedics.

18. On October 17, 2008, Matthews had surgery to repair his torn meniscus.

19. On October 27, 2008, Matthews had a follow-up visit with Dr. Bach, who recommended that he resume physical therapy.

20.     On October 29, 2008, Matthews resumed basic physical therapy. He attended physical therapy three times a week until February 19, 2009. From February 26, 2009, until April 27, 2009, Matthews completed work-conditioning physical therapy five times a week.

21.     On April 20, 2009, Matthews' doctor released him to go back to work on "sedentary" or "light" duty. Matthews then informed the Chicago Fire Department medical section of this restriction.

22.     In late May 2009, Matthews was informed by the Chicago Fire Department that the Chicago Fire Department does not offer sedentary or light duty.

23.     Subsequent to May 2009, Matthews learned that personnel with the Chicago Fire Department had allowed similarly situated white male candidates to take what was effectively sedentary, light, or modified duty to recover from an injury or medical condition. These white candidates included, but were not limited to, Candidate Christopher Clark, a white male candidate in Matthews' class. Defendant employees of the Chicago Fire Department accommodated Candidate Clark's medical condition while he was in the candidate selection process. The same opportunity was not given to Matthews, an African-American, because of his race.

24.     Upon information and belief, Tienda and Edingburg exercised the authority to approve which Firefighter and EMT candidates could be placed on what was effectively light duty, and thus actively participated in the racially motivated decisions about which candidates were permitted to take what was effectively sedentary, light, or modified duty to recover from an injury or medical condition. Matthews did not learn about their involvement until after May 2009.

25. Subsequent to May 2009, Matthews also learned that Dr. Russell had allowed other white male candidates to return to duty even though they were not able to perform their full, active duty responsibilities, and thus actively participated in the racially motivated decisions about which candidates were permitted to return to duty on what was effectively sedentary, light, or modified duty to recover from an injury or medical condition. Moreover, McKillop had allowed other white male candidates to return to duty even though they were not able to perform their full, active duty responsibilities, and thus actively participated in the racially motivated decisions about which candidates were permitted to return to duty on what was effectively sedentary, light, or modified duty to recover from an injury or medical condition. Matthews learned from the deposition of Defendant Tienda on October 19, 2012 and the deposition of Defendant Edingburg on October 30, 2012 in this case that Dr. Russell and McKillop had authority to approve which Firefighter and EMT candidates could receive such accommodations at the Academy. Matthews could not have learned those facts before those depositions were taken.

26. In May 2009, Commander Tienda informed Matthews that his physical therapy sessions had been cancelled, and that he would need to return to Dr. Bach for further assessment.

27. On May 4, 2009, Matthews met with Dr. Bach, who scheduled Matthews for another MRI on May 18, 2009. On May 20, 2009, Matthews met with Dr. Bach again, who informed Matthews that he needed another surgery due to scar tissue and a possible meniscus tear.

28. On June 1, 2009, Matthews met with the Fire Department medical section, and informed the doctor and staff of Dr. Bach's recommendation.

29. On June 26, 2009, Matthews received a phone call from Firefighter Smith, who stated that Matthews needed to return to the medical section to sign his final paperwork with the Chicago Fire Department so he could be taken off the payroll. Matthews asked for more information regarding why he was required to sign final paperwork at this time, and refused to sign until he received further information. On June 29, 2009, Firefighter Smith advised Matthews that he needed to speak to Commander Ignacio to obtain additional information regarding the final paperwork process.

30. On June 30, 2009, Matthews had his second surgery on his right leg.

31. On July 2, 2009, Matthews met with Commander Ignacio. Matthews was placed on medical leave without pay. Commander Ignacio told him that Matthews should have started his final paperwork two to three months prior to July 14, 2009, which was one year into his medical time off.

32. From July 14, 2008, until July 26, 2009, Matthews reported to the Chicago Fire Department medical section to report on his physical status. During those visits, Matthews met with the medical section doctors and staff.

33. On July 8, 2009, Matthews began physical therapy but only received approval for 12 sessions. The Chicago Fire Department's third party insurer, Coventry, denied Matthews' physical therapy request. Commander Tienda also denied the therapy prescribed by Matthews' doctor.

34. In November 2009, Matthews received a letter stating that his health insurance had been cancelled by the City of Chicago. Concerned, Matthews contacted the

Chicago Fire Department, and was informed that Commander Ignacio stated that Matthews' did not have to pay into COBRA insurance. Matthews also was told that his health insurance through the Chicago Fire Department presently was in good standing, and would remain in good standing as long as he continued to pay his $115 per month contribution to maintain insurance coverage for him and his family.

35. On December 1, 2009, Matthews received a letter from Chief Charles Stewart which stated that Matthews would be in the next Chicago Fire Department Candidate class.

36. On December 15, 2009, Matthews' daughter became ill and was hospitalized. That same day, Matthews learned his insurance had been cancelled by the City of Chicago.

37. The assertions in Chief Stewart's letter notwithstanding, Matthews never was permitted to join any subsequent Chicago Fire Department Candidate class. Matthews was constructively discharged from the Chicago Fire Department, and took other work to mitigate his losses in this action, because Defendants denied him the accommodations that other similarly situated white candidates received.

38. The actions complained of in paragraphs 4 through 37 have prevented Matthews from engaging in his chosen profession since his "lay-up."

39. The actions complained of in paragraphs 4 through 37 have caused Matthews to lose wages, incur expenses, and to suffer mentally and physically from stress, anger, humiliation, and frustration.

## COUNT I
## 42 U.S.C. §1983 – Race Discrimination

42. Matthews incorporates by reference the allegations of paragraphs 1 through 41.

43. The actions complained of in paragraphs 4 through 41 were done because of Matthews' race. Defendants allowed non-African-American Firefighter and EMT candidates to take what was effectively sedentary, light, or modified duty, but would not allow Matthews that same opportunity because of his race, African-American. The result of these unlawful actions has been to deprive Matthews of equal employment opportunities because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Plaintiff Matthews prays that this Court:

A. Enter judgment in favor of Matthews and against Defendants for violation of Matthews' rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

B. Declare that the actions of Defendants were discriminatory;

C. Enter an order reinstating Matthews as a Firefighter and EMT candidate with the Chicago Fire Department, and award him back pay and lost benefits;

D. Award Matthews compensatory damages, including, but not limited to, lost wages and other benefits, in such amounts as will reasonably compensate him for his losses;

E. Award Matthews punitive damages in such amount as the Court deems proper;

F. Award Matthews his costs, attorneys' fees, and non-taxable expenses in this action;

G. Grant Matthews such other and further relief as the Court deems equitable and just.

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

/s/ Adele D. Nicholas
*Counsel for Plaintiff*

Adele D. Nicholas
Law Office of Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847-361-3869